**RECEIVED**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JAN -4 2005
AT 8:30
WILLIAM T. WALSH
CLERK

| UNITED STATES OF AMERICA | : | **CRIMINAL COMPLAINT** |
| --- | --- | --- |
| v. | : | Hon. Mark Falk, U.S.M.J. |
| DAVID BANACH | : | Mag. No. 05-3502 |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

I further state that I am a Special Agent with Federal Bureau of Investigation, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached page and made a part hereof.

Gary C. Adler, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,
January 4, 2005, in the District of New Jersey

THE HONORABLE MARK FALK
UNITED STATES MAGISTRATE JUDGE

Signature of Judicial Officer

## Attachment A

### COUNT 1

On or about December 29, 2004, in Morris County, in the District of New Jersey and elsewhere, defendant DAVID BANACH did knowingly and willfully interfere with, disable, and incapacitate a driver, captain, or person, namely an aircraft pilot, while employed in operating and maintaining a mass transportation vehicle, namely a chartered Atlantic Aviation aircraft, with reckless disregard for the safety of human life.

In violation of Title 18, United States Code, Sections 1993(a)(5) and (8), and 1993(b).

### COUNT 2

On or about December 31, 2004, in Morris County, in the District of New Jersey and elsewhere, in a matter within the jurisdiction of the executive branch of the Government of the United States, namely the Federal Bureau of Investigation, defendant DAVID BANACH knowingly and willfully made materially false, fictitious, and fraudulent statements and representations.

In violation of Title 18, United States Code, Section 1001(a)(2).

Dbtf !3;16.ds.11311.KDM!!!!Epdvn f ou2!!!!!!Gjrfe!1201503116!!!!!Qbhf !4!pg5

## Attachment B

I, Gary C. Adler, a Special Agent with the Federal Bureau of Investigation, having conducted an investigation, am aware of the following facts:

1. On or about December 29, 2004, an Atlantic Aviation Flight Services charter aircraft, namely a Cessna Citation jet bearing tail number N102FS [hereinafter "the Aircraft"], was flying from Boca Raton, Florida to Teterboro, New Jersey. The Aircraft was being piloted by R.D. and was transporting approximately six passengers. R.D., a commercial airline pilot since 1971, had previously made several hundred landings at Teterboro Airport during his career.

2. During its landing approach into Teterboro Airport, the Aircraft was traveling at approximately 250 knots and was flying at about 3,000 feet. Both R.D. and his co-pilot, W.D., observed a green-colored laser beam strike and illuminate the left side of the windshield on approximately three occasions. The laser beam flashes distracted both pilots, causing a temporary loss of vision. After regaining his vision, R.D. notified the Teterboro air traffic controller to report the incident. The FBI was ultimately notified of the incident, opened an investigation, and began making efforts to identify the location and source of the laser and the person who was operating it.

3. On or about December 31, 2004, R.D. agreed to accompany law enforcement agents in a Port Authority of New York and New Jersey Police Department ("PAPD") helicopter in order to identify the Aircraft's aeronautical location at the time of the incident described in Paragraph 2. R.D. explained, in substance and in part, that he observed the laser beams emanating from the vicinity of a strip mall that he recognized due to its lighting. Using a Federal Aviation Administration-generated aeronautical mapping of the Aircraft's flight path, R.D. directed the PAPD helicopter to the immediate vicinity from where the laser beams originated. While circling above that location, the PAPD helicopter was struck and illuminated with a laser beam that R.D. described as very similar in color to the one that struck the Aircraft he was operating on or about December 29, 2004. Consequently, a helicopter crewmember shined a spotlight on the house where the laser beam emanated from so law enforcement officers on the ground could respond to that residence.

4. Shortly afterwards, law enforcement responded to the residence identified by the surveillance helicopter. At that time, an individual later identified as defendant DAVID BANACH exited the residence to inquire about the police activity. When informed that law enforcement was investigating incidents relating to laser beams being directed at aircraft, defendant BANACH stated, in substance and in part, that it "was his daughter" who had shined the laser beam on the PAPD helicopter.

1

5.  Defendant BANACH returned inside and retrieved a black box that contained a silver cigar-shaped object identified by defendant BANACH as the laser. The law enforcement officer activated the laser which produced a green light. Defendant BANACH cautioned the law enforcement officer, in substance and in part, not to shine the laser in his eyes because it could blind him.

6.  Thereafter, agents from the FBI were invited by defendant BANACH into his residence where they conducted an interview. During the interview, defendant BANACH stated, in substance and in part, that his daughter shined the laser on the helicopter earlier that evening. Agents also asked defendant BANACH whether he committed the December 29, 2004 laser incident, which had been reported by various news outlets [as described in Paragraph 2]. He stated that he had not.

7.  After questioning other witnesses, defendant BANACH admitted that he, rather than his daughter, shined the laser on the PAPD helicopter earlier that evening, but adamantly denied any involvement in the December 29, 2004 laser incident. Defendant BANACH agreed to accompany agents to the FBI Newark Division office for further questioning.

8.  At the FBI office, defendant BANACH was given his Miranda rights and voluntarily agreed to submit to a polygraph examination and further discuss the incidents with law enforcement. Defendant BANACH provided a handwritten statement admitting that he shined the laser on the PAPD helicopter, but he continued to deny any involvement regarding the December 29, 2004 incident. After the polygraph was completed and during additional questioning, defendant BANACH admitted, in substance and in part, that he had lied to law enforcement and that he shined laser beams on both the PAPD helicopter earlier that evening and the Aircraft on December 29, 2004.

8.  At all relevant times, the Aircraft was a "mass transportation vehicle" within the meaning of Title 18, United States Code, Sections 1993(c)(5) and (8).

AO 245 B (Rev. 12/03) Sheet 1 - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## District of New Jersey

RECEIVED
WILLIAM T. WALSH, CLERK

2006 FEB 17 P 3: 44

UNITED STATES OF AMERICA

v.

DAVID BANACH

Defendant.

Case Number    CR 05-200-01

UNITED STATES
DISTRICT COURT

## JUDGMENT IN A CRIMINAL CASE
(For Offenses Committed On or After November 1, 1987)

The defendant, DAVID BANACH, was represented by Gina Mendola Longarzo, Esq.
Upon motion by the government, counts 2-3 are dismissed.
The defendant pled guilty to count(s) 1 of the INDICTMENT on 11/09/05. Accordingly, the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section | Nature of Offense | Date of Offense | Count Number(s) |
|---|---|---|---|
| 18:1993(a)(5), 1993(b), & 2 | Terrorists attacks & other acts of violence against mass transportation. | 12/29/04 | 1 |

As pronounced on 2/17/06, the defendant is sentenced as provided in pages 2 through 3 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant shall pay to the United States a special assessment of $100, for count(s) 1, which shall be due immediately. Said special assessment shall be made payable to the Clerk, U.S. District Court.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

Signed this the 17th day of February, 2006.

JOHN C. LIFLAND
Senior United States District Judge

AO 245 B (Rev. 12/03) Sheet 4 - Probation

Judgment – Page 2 of 3

Defendant: DAVID BANACH
Case Number: CR 05-200-01

## PROBATION

The defendant is hereby placed on probation for a term of 2 years.

While on probation, the defendant shall comply with the standard conditions that have been adopted by this court (set forth below):

Based on information presented, the defendant is excused from the mandatory drug testing provision, however, may be requested to submit to drug testing during the period of probation if the probation officer determines a risk of substance abuse.

If this judgment imposes a fine, special assessment, costs or restitution obligation, it shall be a condition of probation that the defendant pay any such fine, assessment, costs and restitution and shall comply with the following special conditions:

The defendant shall forfeit all rights to the lasers surrendered to the FBI on December 31, 2004, and be restricted from the possession and/or use of lasers or other similar devices while on probation.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

AO 245 B (Rev. 12/03) Sheet 4a - Probation

Judgment – Page 3 of 3

Defendant: DAVID BANACH
Case Number: CR 05-200-01

## STANDARD CONDITIONS OF PROBATION

While the defendant is on probation pursuant to this Judgment:

1) The defendant shall not commit another federal, state, or local crime during the term of supervision.

2) The defendant shall not illegally possess a controlled substance.

3) If convicted of a felony offense, the defendant shall not possess a firearm or destructive device.

4) The defendant shall not leave the judicial district without the permission of the court or probation officer.

5) The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month.

6) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.

7) The defendant shall support his or her dependents and meet other family responsibilities.

8) The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.

9) The defendant shall notify the probation officer within seventy-two hours of any change in residence or employment.

10) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer any narcotic or other controlled substance, or any paraphernalia related to such substances.

11) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

12) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.

13) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.

14) The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

15) The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.

16) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

---

For Official Use Only - - - U.S. Probation Office

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision or (2) extend the term of supervision and/or modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions, and have been provided a copy of them.

You shall carry out all rules, in addition to the above, as prescribed by the Chief U.S. Probation Officer, or any of his associate Probation Officers.

(Signed) _____
Defendant         Date

_____
U.S. Probation Officer/Designated Witness         Date



# United States Senate
WASHINGTON, DC 20510-0905

BILL NELSON
FLORIDA

March 3, 2006

RDML Mark E. Ferguson, USN
Chief of Legislative Affairs
Department of the Navy
1300 Navy Pentagon Room 4C549
Washington, District of Columbia 20350

RE:   Mr. Henry Gros

Dear Admiral Ferguson:

Please find enclosed correspondence I received from one of my constituents. It involves an important matter under the jurisdiction of your agency. Your timely review and response to the issues raised would be greatly appreciated.

Please send your correspondence directly to my staff assistant, Jeff Scarpiello, at the address below. I look forward to a response at your earliest convenience and thank you in advance for your assistance with this matter.

Sincerely,

Bill Nelson

BN/jjs

Enclosure

United States Senator Bill Nelson, Landmark Two, 225 East Robinson Street, Suite 410, Orlando, Florida 32801
Telephone: (407) 872-7161  •  Toll-Free in Florida Only (888) 671-4091  •  Fax: (407) 872-7165
http://billnelson.senate.gov

00000029

05/30/2006  06:59   7574431862                                                    PAGE  05/09
MAR. 3. 2006  8:05AM                                              NO. 2164   P. 3



**InterTrac® for Government**

Casework Tracking Sheet

Tracking # 29960-OR

Gros, Henry

Post Office Box 61383
Jacksonville, FL  32236
Duval

Phone:  904-783-2595
Email:  s_grof@yahoo.com
ID/SSN:

Promoted From Correspondence

| | | | |
|---|---|---|---|
| Case Type: | Casework | Assigned To: | Jeff Scarpiello |
| Category: | Military (All, Coast Guard, Merchant Marine, DOD Active Duty) | | |
| Date Rec'd: | 02/23/2006 | Status: | Pending |
| Date Due: | | Received Via: | Web |
| Date Closed: | | | |

Casework Description:  Mr. Gros is seeking assistance with the NAVY.
Branch:                 Navy

Details:

I would like to file a complaint that will hopefully lead to an investigation. This complaint regards the Navy in Jacksonville, FL, and their total disregard for the privacy of the residents of the Whitehouse area. The navy has been flying planes; awacs, jets, etc. over the top of our houses at tree top level and have been quite loud. Recently the westside residents made it quite known that they did not want the navy at the old Cecil air base. The above reason is why they don't want the navy here. Despite this the Navy has seen fit to disregard the wishes of the westside residents and constantly fly planes over our houses. I am trying to get this matter heard and stop these airplanes from flying over. Currently I am in the library which is about a mile from my house and the planes are flying overhead. Please let me know what can be done to stop this.

Contact type:

agency

Agency:

Department of Defense

Casework Information

Route History:
02/23/2006 - 08:59 AM - Juan Lopez - Printed Tracksheet

InterTrac Tracksheet 01                         1                          02/23/2006

00000030